Filed 3/24/15  P. v. Sanders CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064743 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD235740) |
| STEPHEN CHARLES SANDERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In June 2013, Stephen Charles Sanders entered a negotiated guilty plea to two counts of kidnapping (Pen. Code, § 207, subd. (a); counts 4 and 8; all further statutory references are to the Penal Code), each with a gang enhancement (§ 186.22, subd. (b)(1)).

At the time of the plea bargain, Sanders had four other pending trial court cases: case No. SCD204952 (Court of Appeal No. D064744), case No. SCD216604 (Court of Appeal No. D064775), case No. SCD222861 (Court of Appeal No. D064749) and case No. SCD239270 (Court of Appeal No. D064746). The plea bargain provided, as to all five cases, for a stipulated 25-year sentence and waiver of the right to appeal. In September, the court denied Sanders's motion to withdraw his plea. The court sentenced Sanders to 25 years in prison including, in the instant case, the five-year middle term on count 4, a 10-year term for the gang enhancement and concurrent terms on count 8 and its enhancement. Sanders appeals. We affirm.

BACKGROUND

In April 2007, Sanders was president of the San Diego chapter of the Hells Angels, deemed by law enforcement to be an outlaw motorcycle gang. At a Hells Angels meeting in their clubhouse, Sanders called for a vote, and Nick Neff was voted out of the Hells Angels in bad standing. Neff was attacked and, at Sanders's direction, taken outside and restrained. Neff was brought back into the clubhouse and Sanders restrained him while, at Sanders's direction, Hells Angels vice president David Dabbs used a tattoo gun to obliterate all of Neff's tattoos. Sanders warned Neff that if he spoke to the police, the Hells Angels would cut off his head. Sanders and two other Hells Angels' members took Neff, in Sanders's truck, to retrieve the title to Neff's motorcycle. Neff signed over the title under duress. Sanders and the two other Hells Angels' members then took Neff to Neff's home, where the two other members escorted Neff inside. There, the two members took a television, a Hells Angels calendar and photographs of Hells Angels'

2

members. In June 2011, Neff's motorcycle was recovered outside the clubhouse in the possession of a Hells Angels' member.

In May 2010, Preston James worked at a motorcycle shop owned by Sanders's wife. Sanders arrived at the shop with two other Hells Angels' members, Kirtith Nielsen and Mike Ottinger, and Shane Sanders (Shane), Sanders's son and later president of the Wrecking Machine, a motorcycle group run by Sanders. Sanders asked James to help load tables and chairs into a truck. As James lifted a stack of chairs, Nielsen hit him in the back of the head with a baseball bat. The blow caused James to stumble and defecate. As Ottinger acted as a look out, Nielsen hit James several more times with the bat. Nielsen, Shane and Sanders punched James. James was knocked to the ground. Stephens took James's cell phone and knife and told him they were going to take his motorcycle. At Sanders's direction, Shane and Nielsen put James in Shane's truck and drove him to James's home to get James's guns. Sanders and Ottinger also went to James's home, in Sanders's truck. Sanders and Ottinger went into the home, then came out with James's gun, a gun belonging to James's roommate and items bearing Hells Angels' insignias. James was allowed to get out of Shane's truck, and Sanders and his three companions left. James went inside and discovered the pink slips for his two motorcycles and his car were missing.

James suffered multiple facial fractures and broken ribs. He was hospitalized and underwent surgery. Without James's knowledge, title to one of his motorcycles was transferred to Aden Stay, former president of the Wrecking Machine and a friend of Sanders. Sanders had the motorcycle shipped to Stay in Hawaii. In March 2011, the

3

motorcycle was shipped back to Sanders in San Diego. Without James's knowledge, the motorcycle was reregistered in his name. Sanders called James and said, "Nobody needs to go into handcuffs over this." The motorcycle was subsequently recovered in San Diego by James. While in custody, Sanders attempted to enlist others to kill witnesses, victims, a law enforcement agent and deputy district attorneys associated with the prosecution of this case.

## DISCUSSION

Appointed appellate counsel has filed a brief summarizing the facts and proceedings below. Counsel presents no argument for reversal, but asks this court to review the record for error as mandated by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel lists, as a possible, but not arguable, issue, whether the waiver of appellate rights was knowing, intelligent and voluntary.

We granted Sanders permission to file a brief on his own behalf. He has done so and raises contentions concerning the validity of his plea, the denial of his plea withdrawal motion, prosecutorial misconduct and ineffective assistance of counsel.

"A guilty plea admits every element of the offense charged and is a conclusive admission of guilt." (*People v. Maultsby* (2012) 53 Cal.4th 296, 302.) The absence of a certificate of probable cause prevents Sanders from challenging the validity of his guilty plea. (§ 1237.5; *People v. Mendez* (1999) 19 Cal.4th 1084, 1095.) Furthermore, as part of his plea, Sanders waived the right to appeal. The record shows Sanders's waiver of appellate rights was knowing, intelligent and voluntary.

4

A review of the record pursuant to *Wende* and *Anders*, including the possible issue listed pursuant to *Anders*, has disclosed no reasonably arguable appellate issue.  Sanders has been competently represented by counsel on this appeal.

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.